FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID G.,[1] <br><br>                    Plaintiff, <br><br>        vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>                    Defendant. | No. 1:19-cv-03087-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 16, 20 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.  *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant.  *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 20. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 5, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of June 30, 2012. Tr. 63, 161-66. The application was denied initially, and on reconsideration. Tr. 95-98; Tr. 103-09. Plaintiff appeared before an administrative law judge (ALJ) on February 13, 2018. Tr. 33-62. On May 10, 2018, the ALJ denied Plaintiff's claim. Tr. ALJ 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 5, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, unspecified anxiety disorder, and methamphetamine use disorder in reported sustained remission. Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff has the RFC to perform a full range of all work with the following limitations:

> [Plaintiff] is able to engage in unskilled, repetitive, routine tasks in two-hour increments. He is able to perform work limited to no contact with [sic] public and occasional contact with supervisors. He is able to work in proximity to, but not in coordination with, co-workers. He is expected to be off-task ten-percent of the time, while still meeting the minimum production requirements of the job. He is expected to be absent from work ten times per year.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cleaner II, night janitor, and hand packager. Tr. 27. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. *Id.*

On March 11, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  Plaintiff raises the following issues for review:

    1.  Whether the ALJ properly evaluated the medical opinion evidence;

    2.  Whether the ALJ properly evaluated lay witness evidence; and

    3.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 1-2.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Neil

Anderson, LICSW, Siobhan Budwey, Ph.D, and Brian VanFossen, Ph.D.  ECF No.

16 at 3-16.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

ORDER - 9

2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[3]  However, an ALJ

is required to consider evidence from non-acceptable medical sources, such as

therapists.  20 C.F.R. § 416.913(d).[4]  An ALJ may reject the opinion of a non-

acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763

F.3d at 1161.

### 1. Mr. Anderson

Mr. Anderson, a treating counselor, opined that Plaintiff is: mildly limited in

his ability to remember locations and procedures; carry out very short simple

instructions; perform activities within a schedule, maintain regular attendance and

be punctual; make simple work-related decisions; interact appropriately with the

general public; maintain socially appropriate behavior and adhere to basic

standards of neatness; be aware of normal hazards and take appropriate

precautions; and set realistic goals or make plans independently; moderately

---

[3] The regulation that defines acceptable medical sources is found at 20 C.F.R. §
416.902 for claims filed after March 27, 2017.  The Court applies the regulation in
effect at the time of Plaintiff's filing.

[4] The regulation that requires an ALJ's consider opinions from non-acceptable
medical sources is found at 20 C.F.R. § 416.927(f) for claims filed after March 27,
2017.  The Court applies the regulation in effect at the time of Plaintiff's filing.

limited in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number/length of breaks; ask simple questions or ask assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; travel in unfamiliar places or use public transportation; perform activities of daily living; and maintain concentration, persistence or pace; and markedly limited in his ability to: work in coordination or proximity to others without being distracted by them; respond appropriately to changes in the work setting; and maintain social functioning. Tr. 337-39.

Mr. Anderson also opined: Plaintiff's residual disease process has resulted in such marginal adjustment that even a minimal increase in mental demands or environment change would be predicted to cause Plaintiff to decompensate; Plaintiff would be off-task 21 to 30 percent of the time in a 40-hour work week; and Plaintiff would miss four or more days per month if he worked a 40-hour workweek. Tr. 339. The ALJ gave Mr. Anderson's opinion limited weight. Tr.

23.  As Mr. Anderson is not an acceptable medical source, the ALJ was required to give germane reasons to reject the opinion.  *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Mr. Anderson was rendered on a checkbox form that was not further explained or supported.  Tr. 23.  The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray*, 554 at 1228.  Also, individual medical opinions are preferred over check-box reports.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).  An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.  *Crane*, 76 F.3d at 253.  However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").

In addition to noting the checkbox format, the ALJ concluded that Mr. Anderson's opinion was not explained nor supported.  Tr. 23.  The form completed by Mr. Anderson contains only checked boxes, without any explanations of the

opinion. Tr. 337-39. Further, the records are not consistent with Mr. Anderson's opinion, as discussed *infra*. The lack of explanation/support for the opinion was a germane reason to reject Mr. Anderson's opinion.

Second, the ALJ found the treatment records did not support Mr. Anderson's opinion. Tr. 23. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

While Mr. Anderson opined Plaintiff has marked social limitations, Mr. Anderson's notes indicate at multiple appointments Plaintiff reported being increasingly social, having decreased depressive symptoms, and reported playing piano in public spaces on several occasions. Tr. 23 (citing Tr. 296, 307, 373, 393, 411, 457, 493). Plaintiff argues his symptoms have fluctuated and the records overall are consistent with Mr. Anderson's opinion. ECF No. 16 at 7-8. The records demonstrate some fluctuation in symptoms, but Plaintiff relies on evidence demonstrating he had abnormal mood and affect and thoughts of death. Tr. 305-07. However, the records the demonstrate that despite the abnormalities, he

generally had normal memory, concentration and ability to interact socially, as discussed *infra*.

In April 2015, Plaintiff was seen in the emergency department, where he reported recent self-harm. Tr. 255. Plaintiff reported he had been depressed for 15 years but had not sought treatment since he was 17 years-old. Tr. 259. He was discharged home with a plan for follow-up care. *Id.* In August 2015, he again was found to be having a mental health crisis and agreed to follow-up with outpatient services. Tr. 291, 312. At a counseling appointment in January 2016, Plaintiff was depressed and tearful at times, with moderate to impaired eye contact, but normal psychomotor behavior, orientation, insight, judgment, concentration, memory, and speech, and he was observed as "very intelligent." Tr. 283.

At the February 2016 consultative exam, Plaintiff was sullen, hopeless, discouraged, and he had psychomotor retardation, poor eye contact, and rang his hands and picked his fingernails, though he was not agitated and had a good attitude. Tr. 273. He missed some items on exam, but was able to perform three-step commands, recall five words immediately and four out of five words after a delay. *Id.* He had intact abstract thinking, insight and judgment. Tr. 274. Based on the exam, the examiner opined Plaintiff had no limitations due to his psychiatric conditions. *Id.* At a February 2016 medication management appointment, Plaintiff reported he did not want to take "drugs" anymore and discontinued his citalopram

but agreed to try trazodone and hydroxyzine and reported continued use of marijuana. Tr. 301.

In June 2016, Plaintiff underwent an exam for Department of Social and Health Services (DSHS) disability benefits, during which he had psychomotor retardation, poor remote memory, depressed mood, low energy, poor insight, and fair judgment. Tr. 279-80. He interacted well with the examiner, and had normal perception, thoughts, fund of knowledge, concentration, and abstract thought. *Id.* That same month, Plaintiff reported to his counselor "things have been going well for a while," and he reported increased social connections, playing the piano and guitar, and gardening, and he had a euthymic mood and congruent affect. Tr. 296.

In September 2016, Plaintiff had a crisis contact due to suicidality; he was released after two days but that same month he had normal memory, attention, concentration and orientation. Tr. 488, 508-11. Throughout 2017, Plaintiff had varying abilities to engage in conversations during his counseling sessions, at times interacting appropriately and at other times becoming tearful and upset but interacted appropriately in most of his group sessions. *See, e.g.,* Tr. 380, 382, 408-09, 413, 451. Plaintiff spent some of 2017 working on setting up a perma-culture gardening nonprofit, working on gardening and engaging in social activities like visiting the library, college and friends. Tr. 401-02, 406, 432, 449, 457. In June 2017, Plaintiff's counselor observed his cyclical behaviors, from expansive and

talkative to withdrawn and hopeless over a few months and noted Plaintiff may be bipolar but refuses mood stabilizing medication. Tr. 399. In July 2017, he reported decreased thoughts of suicide and self-harm and reported increased training and exercise, Tr. 382, and in October 2017, Plaintiff had a euthymic mood and congruent affect and reported increased social skills, working through his difficult times by doing chores and avoiding too much stimulation; he reported getting multiple things done around his home, Tr. 369, 373. In December 2017, Plaintiff reported thoughts of suicide and was transported to the emergency department. Tr. 358-60. Plaintiff did not follow-up after his crisis contact and appeared in many layers of clothing and not showered when staff made contact. Tr. 357. He reported he had "a lot of visitors" and agreed to a follow-up appointment. *Id.*

In summary, records demonstrate Plaintiff had periods of increased suicidality, on occasion resulting in crisis contact but never long-term holds. Though he had some abnormal findings, such as abnormal mood and affect, he generally had the ability to engage in social activities and household tasks and had normal memory and concentration. Thus, the ALJ's finding that the records are inconsistent with Mr. Anderson's opinion is reasonable. This was a germane reason to reject the opinion.

Third, the ALJ reasoned Mr. Anderson is not a disability expert and did not review Plaintiff's other records before rendering his opinion.  Tr. 23.  The ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion.  *Orn v. Astrue*, 495 F.3d 625, 631.  Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  While the ALJ may consider these factors when weighing opinions, the record is not clear as to Mr. Anderson's familiarity with Social Security's requirements, nor his familiarity with other evidence in the record.  However, any error would be harmless as the ALJ gave other germane reasons to reject the opinion.  *See Molina*, 674 F.3d at 1115

### 2. Dr. Budwey

Dr. Budwey, an examining source, opined Plaintiff's anxiety is moderate to severe, and his depression is very severe, per Plaintiff's report and scores on the Hamilton Anxiety and Depression Rating Scale, and opined Plaintiff's overall severity rating is marked.  Tr. 277-78.  She further opined Plaintiff has mild to no limitations in his ability to perform routine tasks without special supervision and be aware of normal hazards and take appropriate precautions; moderate limitations in his ability to understand, remember and persist in simple and detailed tasks;

learn new tasks; adapt to changes; make simple work-related decision; ask simple

questions or request assistance; maintain appropriate behavior in the workplace;

and marked limitations in his ability to perform activities within a schedule,

maintain regular attendance and be punctual without special supervision;

communicate and perform effectively in a work setting; set realistic goals and plan

independently; and complete a normal workday/workweek without interruptions

from psychological symptoms. Tr. 278. The ALJ gave Dr. Budwey's opinion

limited weight. Tr. 24. As her opinion is contradicted, the ALJ was required to

give specific and legitimate reasons to reject Dr. Budwey's opinion. *See Bayliss*,

427 F.3d at 1216.

First, the ALJ found the opinion inconsistent with the longitudinal record.

Tr. 24. A medical opinion may be rejected if it is unsupported by medical

findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at

957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. An ALJ may

discredit physicians' opinions that are unsupported by the record as a whole.

*Batson*, 359 F.3d at 1195.

While Plaintiff's mental health records may support another reasonable

interpretation, the ALJ's finding that Dr. Budwey's marked limitations were not

supported by the records is a rational finding. *See id.* at 1198 (recognizing that

when the evidence in the record is subject to more than one rational interpretation,

ORDER - 18

the court defers to the ALJ's finding). As discussed *supra,* Plaintiff's records generally demonstrate Plaintiff had normal memory, concentration, attention, and ability socialize. The ALJ also found Dr. Budwey's opinion was based at least in part on Plaintiff's self-report and his reports during the exam included some inconsistencies with the record. Tr. 24. While Plaintiff reported to Dr. Budwey that he left college multiple times due to depressive symptoms, he reported elsewhere he was kicked out of college for drug use. Tr. 24 (citing Tr. 272, 276, 278). There are multiple varying reports throughout the record as to where Plaintiff attended school, how long he attended, why the schooling ended, and whether he graduated or not. Tr. 272 (reporting being kicked out of University of Washington for drug use, having "failed out of WVC," and obtaining an Associate's degree in finance and economics); Tr. 283 (reporting attending University of Washington to study mechanical engineering but dropping out due to drug use); Tr. 330 (reporting obtaining a Bachelor's degree in Finance and Economics from Central Washington University); Tr. 516 (reporting possessing a Bachelor's degree). This was a specific and legitimate reason, supported by substantial evidence, to discount Dr. Budwey's opinion.

Second, the ALJ found the opinion inconsistent with Dr. Budwey's own examination notes. Tr. 24. A physician's opinion may be rejected if it is unsupported by the physician's notes. *Connett*, 340 F.3d at 875. While Dr.

Budwey opined Plaintiff has moderate limitations in his ability to understand, remember and carry out simple tasks, Plaintiff was able to recall three out of three items after a five-minute delay, performed serial threes without errors and performed a three-step command without errors.  Tr. 24 (citing Tr.  276, 278).  Though Plaintiff's working memory was deemed poor, Dr. Budwey found his immediate memory fair, delayed memory adequate and concentration adequate.  Tr. 280.  Though Dr. Budwey opined Plaintiff would have marked limitations communicating in the workplace, he engaged well during the exam, answered questions appropriately, and expressed his thoughts appropriately, though he had soft and slow speech and fair eye contact.  Tr. 279-80.  This was a specific and legitimate reason to reject Dr. Budwey's opinion.

Third, the ALJ reasoned Dr. Budwey is not a disability expert and did not review Plaintiff's other records before rendering her opinion.  Tr. 23.  The ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion.  *Orn*, 495 F.3d at 631.  Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).

Here, Dr. Budwey did not review any records when rendering her opinion.  Tr. 276.  This was a specific and legitimate reason to reject Dr. Budwey's opinion.

The record is not clear as to Dr. Budwey's familiarity with Social Security's requirements. However, any error would be harmless as the ALJ gave other reasons to reject the opinion. *See Molina,* 674 F.3d at 1115.

### 3. Dr. VanFossen

Dr. VanFossen, a reviewing doctor for DSHS, reviewed Dr. Budwey's opinion and opined Dr. Budwey's diagnosis of depression was supported by the evidence but the anxiety diagnosis was not supported. Tr. 314. He further opined Dr. Budwey's opinion regarding Plaintiff's limitations, onset date, and duration was consistent with the evidence. Tr. 314-15. The ALJ gave Dr. VanFossen's opinion limited weight. Tr. 24. As Dr. VanFossen's opinion is contradicted, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject the opinion. *See Bayliss,* 427 F.3d at 1216.

First, the ALJ reasoned Dr. VanFossen's opinion is inconsistent with the longitudinal record and Dr. Budwey's examination. Tr. 24. A medical opinion may be rejected if it is unsupported by medical findings. *Bray,* 554 F.3d at 1228; *Batson,* 359 F.3d at 1195; *Thomas,* 278 F.3d at 957; *Tonapetyan,* 242 F.3d at 1149; *Matney,* 981 F.2d at 1019. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson,* 359 F.3d at 1195.

Dr. VanFossen's opinion reiterates Dr. Budwey's opinion, without any changes to the limitations. Tr. 314-15. As discussed *supra,* the ALJ reasonably

ORDER - 21

found Dr. Budwey's opinion inconsistent with her examination, and the longitudinal record. This was a specific and legitimate reason to reject Dr. VanFossen's opinion.

Second, the ALJ reasoned Dr. VanFossen is not a disability expert and did not review Plaintiff's other records before rendering his opinion. Tr. 24. The ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion. *Orn*, 495 F.3d at 631. Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6).

Here, Dr. VanFossen reported only reviewing Dr. Budwey's records when rendering his opinion. Tr. 314. Plaintiff argues it appears Dr. VanFossen considered other evidence, however he did not list any other records. ECF No. 16 at 16, Tr. 314. This was a specific and legitimate reason to reject Dr. VanFossen's opinion. The record is not clear as to Dr. VanFossen's familiarity with Social Security's requirements. However, any error would be harmless as the ALJ gave other reasons to reject the opinion. *See Molina,* 674 F.3d at 1115.

Plaintiff contends the ALJ erred by giving more weight to the opinions of the State Agency non-examining sources, JoAnne Coyle, Ph.D., and John Robinson, Ph.D., than he gave to other sources including Dr. VanFossen, as they

ORDER - 22

did not have access to the later opinions or records.  ECF No. 16 at 15-16.

Generally, an ALJ should accord more weight to the opinion of an examining

physician than to that of a non-examining physician.  *See Andrews*, 53 F.3d at

1040-41.  However, the opinion of a non-examining physician may serve as

substantial evidence if it is "supported by other evidence in the record and [is]

consistent with it."  *Id*. at 1041.

     Dr. Coyle opined Plaintiff is moderately limited in his ability to

understand/remember and carryout detailed instructions but can

understand/remember and carryout both simple and multi-step instructions; he can

maintain effort for two-hour periods over the course of an eight hour workday with

acceptable pace and persistence; he can handle brief superficial interactions with

the general public on an infrequent basis and can participate in typical interactions

with coworkers and supervisors while completing tasks of a nonsocial nature; he

can work in a work setting that does not require adherence to strict dress codes or

cleanliness standards; and he can adapt to minor changes in routine and is capable

of independent goal directed behavior, traveling independently and being aware of

typical hazards.  Tr. 72-74.  Dr. Robinson gave a similar opinion, further

explaining Plaintiff can follow a three-step command but did not add any

additional limitations.  Tr. 89-91.

The ALJ gave their opinions great weight, reasoning they are consistent with the longitudinal record. Tr. 22-23. Dr. Coyle and Dr. Robinson's opinions are supported by the evidence outlined *supra*, and are consistent with the record, thus their opinions amounted to substantial evidence to support the ALJ's rejection of opinions of Mr. Anderson, Dr. Budwey and Dr. VanFossen. Plaintiff is not entitled to remand on these grounds.

**B. Lay Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of lay opinion evidence from Nina Manuel, Plaintiff's friend, and Ellen Overby, Plaintiff's DSHS facilitator for his SSI application. ECF No. 16 at 16-18. An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

1    Nina Manuel submitted a statement that she had known Plaintiff for three

2    years, Plaintiff has difficulty with social interactions and emotional regulation,

3    Plaintiff has difficulties with handling changes, leaving the home alone, managing

4    money, and personal care, he has limitations in his ability to stand, walk, complete

5    tasks, follow instructions, understand, concentrate, get along with others and

6    remember things, and he requires encouragement for yardwork/household chores,

7    Tr. 213-20.  She stated Plaintiff cannot walk more than a few blocks without leg

8    pain and needs to take a break for "maybe" ten minutes or longer before he walks

9    again, he cannot pay attention for long on a topic that does not interest him, he

10   does not always finish things he starts, he has a hard time with instructions, and he

11   is "not set up for a work environment."  *Id.*

12   Ellen Overby submitted a statement that Plaintiff spoke in a low voice and

13   did not make any eye contact, he did not know the answers to a lot of questions, he

14   had a severely depressed demeanor, he reported isolating, daily thoughts of suicide

15   and a history of self-harm, and he reported flunking out of college and having

16   difficulties since the age of 16.  Tr. 229.  The ALJ gave Ms. Manuel and Ms.

17   Overby's statements little weight.  Tr. 25.

18   First, the ALJ found Ms. Overby had met Plaintiff on only one occasion.  *Id.*

19   The frequency with which a lay witness observes the claimant is a relevant

20   consideration in how much weigh to assign to a lay opinion.  20 C.F.R. §

ORDER - 25

416.927(c)(2), (f)(1).  Ms. Overby is a DSHS SSI facilitator and the records

indicate her only interaction with Plaintiff was during one SSI application

appointment.  Tr. 230, 238.  This was a germane reason to reject Ms. Overby's

statement.

Second, the ALJ found Ms. Overby and Ms. Manuel's statements were not

consistent with Plaintiff's reports.  Tr. 25.  Inconsistency with other evidence in the

record is a germane reason to discredit lay witness evidence.  *Lewis v. Apfel*, 236

F.3d 503, 512 (9th Cir. 2001).  While Ms. Manuel reported Plaintiff's ability to

complete projects varied, Plaintiff may have reported he can finish things he starts,

though it is unclear as he checked both boxes responsive to the question.  Tr. 25

(citing Tr. 199, 218).  While Ms. Manuel reported Plaintiff has difficulty with

instructions and paying attention, Plaintiff reported no such issues.  Tr. 199, 218.

Additionally, Ms. Manuel reported Plaintiff can walk only blocks, while Plaintiff

reported he can walk 20 or more miles.  *Id.*  Though Ms. Overby reported Plaintiff

flunked out of college five times due to depressive symptoms, Plaintiff reported he

was kicked out due to drug use,  Tr. 25 (citing Tr. 229, 272) and elsewhere

reported he graduated college,  Tr. 180.  This was a germane reason to reject the

statements.  Plaintiff is not entitled to remand on these grounds.

**C. Step-Five**

Plaintiff contends the ALJ erred at step five. ECF No. 16 at 18-20. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d at 1467. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228. As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's

limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff argues the ALJ's step five finding was based on an improper RFC formulation and that Plaintiff should have been found further limited and thus disabled. ECF No. 16 at 18-21. However, Plaintiff's argument first assumes that the ALJ erred in finding Plaintiff would be off task 10 percent of the time and would miss work 10 times a year. *Id.* at 18. Plaintiff contends the ALJ did not base the finding on medical evidence. *Id.* at 18-19. The RFC is based on all relevant evidence, and the ALJ is responsible for translating and incorporating

findings into an RFC.  *See* 20 C.F.R. § 416.920(e); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Here, the ALJ considered the medical records and opinions in forming the RFC.  Tr. 18-26.  The ALJ also considered Plaintiff's statements but found they were not fully consistent with the evidence.  Tr. 21.  Plaintiff does not challenge the ALJ's rejection of his statements, thus waiving any argument on that issue.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

The ALJ discussed medical records that demonstrate Plaintiff has no more than moderate limitations, including the consultative examinations discussed *supra.*  Tr. 19-20.  The ALJ reasoned Plaintiff's reported activities, including his ability to talk with others, go to the park and library, read, play instruments, create lesson plans, engage in muscle building, work on starting his own nonprofit, and volunteer, demonstrate higher functioning than alleged and the activities are more consistent with Dr. Coyle and Dr. Robinson's opinions.  Tr. 18-22.

Dr. Coyle and Dr. Robinson found Plaintiff capable of sustaining full-time work despite his limitations and opined he could sustain attention/concentration for

tasks of a nonsocial nature for two-hour period, can maintain an acceptable pace and persistence and can maintain a schedule and regular attendance. Tr. 73, 90. The ALJ's RFC is consistent with these opinions and is supported by substantial evidence discussed *supra,* including Plaintiff's generally normal memory, concentration, attention and ability to engage in some social activities. Although Plaintiff has had multiple emergency mental health incidences, none of the incidences during the relevant adjudicative period lasted an extended period; thus, the evidence is consistent with the ALJ's finding Plaintiff would not miss more than 10 days per month.

Second, Plaintiff's argument assumes the ALJ erred in considering the medical opinion evidence. ECF No. 16 at 18-21. For reasons discussed throughout this decision, the ALJ's consideration of the medical opinion evidence is legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 30

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 24, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 31